Good morning, Your Honors. Good morning, and if you can, if we can pause for just a minute to make sure that Counsel for Appley, who's not yet on the screen, is is here. All right, there we are. Okay, and Mr. Blau, can you can you hear us? Yes, can you hear me? Yes, yes. Okay, great. Thank you. Thank you very much. All right, Mr. Kentra, you may proceed. May it please the Court, my name is Chris Kentra, and I represent the appellant here, JanOne. This is an insurance coverage dispute about whether a request for a deposition issued by the SEC constituted an inquiry, as that term is defined in the Great American policy that is at issue in this case, such that JanOne, or Great American, is responsible for certain defense expenses occurred by JanOne in responding to additional subsequent acts by the SEC. In December of 2017, the SEC began an investigation of a company called Live Ventures, and specifically the SEC investigated a transaction in which JanOne, a company related to Live Ventures, sold one of its wholly owned subsidiaries named ApplianceSmart to a subsidiary of Live Ventures. The SEC sought testimony from certain individuals that were employees, officers, and or directors of both Live Ventures and JanOne. The SEC deposed JanOne's CEO, who was also a director of Live Ventures, Mr. Tony Isaac, and in that deposition, the SEC asked Mr. Isaac questions about his role at Live Ventures, but at the same time, asked questions about his position as CEO of JanOne and JanOne's decision to engage in the ApplianceSmart transaction. As set forth in Mr. Isaac's affidavit that was submitted in opposition to Great American's motion for summary judgment, this was the first time that Mr. Isaac came to believe that JanOne was becoming the subject of the SEC's investigation. The SEC then notified JanOne's counsel, Mr. Isaac's counsel, that it wanted to take the deposition of a gentleman by the name of Mr. Tim Mottula. Mr. Mottula was a director of JanOne, and most importantly here, he was the sole member of the special committee for JanOne's board of directors overseeing the ApplianceSmart transaction. The SEC informed JanOne's counsel that they wanted to talk to Mr. Mottula about the ApplianceSmart sale and the role that he played with respect to, on behalf of the board of directors for JanOne. JanOne gave notice of Mr. — the request for Mr. Mottula's deposition, but as this Court knows, Mr. Mottula's deposition was never taken. The request for the deposition by the SEC was withdrawn. Upon receipt of the notice that JanOne gave to Great American that, in fact, the SEC had requested Mr. Mottula's deposition, Great American acknowledged that Mr. Mottula qualified as an insured person under the Great American policy, and its counsel also acknowledged in a letter that, to the extent that Mr. Mottula was going to be questioned about his role with respect to the ApplianceSmart transaction on behalf of JanOne, that, in fact, that deposition or inquiry would constitute an inquiry under the policy. So suppose that we — suppose we agree with you that it does constitute an inquiry, and I — it's not — not really clear to me that you — the other side is really even seriously contesting that at this point. Even if it's an inquiry, the — the expenses still have to arise out of it to be covered. And how does anything arise out of a deposition that didn't actually take place? Well, I don't think it necessarily needs to arise out of the deposition under the reading of the policy, Your Honor. I think that, in fact, the arising-out-of language talks about that an inquiry — under the policy, inquiries are treated as claims under the Great American policy. And under the terms of the policy, when notice is given of an inquiry, the policy states that any other claim that arises out of the inquiry shall be deemed to have first been made at such time the written inquiry was received by the insurer. Here, we believe this was the first instance. And there's evidence in the record that, in fact, the SEC wanted to talk to Mr. Mottula about JanOne and its decision to sell ApplianceSmart. And this was the first instance of — of the SEC investigating JanOne that led to the subsequent activities. The record shows that after the Mottula deposition request was withdrawn, other JanOne representatives were deposed. Wells' notices were issued against JanOne and to their CFO, Mr. Verland Johnson, and then obviously, suit was filed. So, I mean, that — that — if that's true, that means that they're related in some way, and maybe — maybe both the notice of intent to take Mr. Mottula's deposition and the other things arise out of — you would say that they all arise out of one common investigation, but I don't understand how the subsequent events can be said to arise out of the notice to take Mr. Mottula's deposition, which is what it seems like you need to be able to show — excuse me — under the policy, isn't it? So we've cited case law where courts have interpreted the phrase arise out of quite broadly. There's a disagreement among the parties about whether Nevada law should control the interpretation of this provision or whether Minnesota law, but under either instance, I think it leaves the same result. And the authority that we've cited, we've cited several decisions of this Court as well as a Nevada decision finding that the phrase arise out of means incident to or having a connection with. There's evidence in the record in this case that, in fact, the SEC wanted to speak with Mr. Mottula with respect to the unique role that he played with respect to the transaction that was being investigated. That's in the record. And to the extent that it had a connection with the subsequent activities that the SEC pursued against GN-1, then I think under the common meaning of this policy, it's under the definition of arise out of that, in fact, the standards met. And so the cases that I looked at, a number of them used the phrase causally connected with. Do you agree that there has to be at least some form of causation for something to arise out of something else? I'm not sure that's necessary, Your Honor. I think the causally connect language, as I understand it, appeared in the Minnesota cases that were cited by the parties, the Faber decision, the Doherty decision. I think when you look at, like, for example, the Ironshore indemnity case or the Continental Casualty case, the language that's used is incident to or having a connection with. But I thought, like, so Ironshore, that's a federal case applying Nevada law, right? Correct. Yeah. And there, I thought the court there said that the thing that arose out of the other thing had flowed from it and would not have happened but for it, which but for sounds like the language of causation to me. So you think they were saying something else? I think they're saying it more broadly, Your Honor, and I think the terminology's been used significantly in the Sentinel Therapeutics case, which is a prior decision of this court, Ironshore, Continental Casualty, and the L.A. Lakers case that was cited as well. And here, I mean, if you look at Great America's interpretation, at page 34 of their brief, Great American argues that a rising out of has to be narrowly construed such that a subsequent claim only arises out of an inquiry to the extent that a deponent somehow gives damaging information during the inquiry and subsequently further action is taken against the deponent. That's not what this language says. The endorsement in the language in endorsement number three in the Great American policy refers to the insureds generally. It also says that to the extent that notice of an inquiry is given, the inquiry shall be treated as a claim and, quote, any other claim which arises out of such inquiry shall be deemed to have first made at such time that the insurance company received notice. I think that's the operative language that controls here, and that's why the series of events that were in the district court show that there was a continuation here, and these were all connected, that Mr. Metulla's deposition request was relating to the fact that he was serving as the sole member of a special committee with respect to the transaction that was being investigated. I think that the purpose of a special committee is very important here. I mean, a special committee is constituted by the board of directors for purposes of protecting its shareholders, the company's shareholders, in the context where potentially there's a conflict of interest or some issue with respect to the board's ability to carry out its normal function. Mr. Metulla served a really important role here, and he only served it on behalf of Jan. 1, and as we see from the subsequent activities of the SEC, in fact, they kept going, and it was all related. They're all casually connected. They asked for Mr. Metulla's deposition, decided they didn't want it, but they deposed other Jan. 1 individuals. Then they issued well notices to the Jan. 1 CFO and to Jan. 1, and then obviously filed suit challenging aspects of the Appliance Smart Transaction. So I'd like to reserve the rest of my time for rebuttal. You may. Mr. Blount? Can you hear me okay, Your Honors? Yes. And may it please the Court, good morning. I want to address a few quick things first, and then I'll rewind a little bit. First of all, on page 34, nowhere in our brief has Great American argued that a rising out of under any state law should be narrowly construed, and nor did we say that damaging information had to be given at the depot. What we said was, and what our position is, is that yes, it's broadly construed. A rising out of is, in fact, broadly construed under most state laws, including Nevada and Minnesota, and however, there is some causal connection. I mean, a rising out of means a rising out of. Flowing from, originating from, growing out of, there's, it's not any connection with. That is sort of an absurd notion, and it's not supported by any case, and it's not... How do you deal with Ironshore that seems to have a causation that may not strictly be tethered to causation? Well, first, if you read the decision and the cases that Ironshore relied on, those cases are originating from having its origin in, growing out of, things like that, which are consistent with common sense, and also consistent with what we're talking about here. So, if I may rewind a little bit. First of all, or going back a little bit, we don't know, and Great American has not conceded whether the, what we are calling the Matula Notice, right? The SEC's email saying we want to depose Mr. Matula. We don't know whether that's an inquiry, regardless of his role with either or both companies, right? Because he was never deposed, right? No documents were produced in response to the subpoena that came after our policy expired. The only thing that happened during our policy was this, we want, the SEC saying we want to take your deposition. What Great America said at that time was, hey, look, we don't know if this is an inquiry. It could be. We don't know in what capacity or why they want to depose Mr. Matula. Okay, we'll pay for the cost of the depo, and then we'll review the deposition transcript, and then we'll be able to determine whether or not it's an inquiry, you know, the capacity in which Mr. Matula was going to be deposed, okay? We don't know if it was an inquiry, because he was never deposed. Even if he, even if it does qualify as an inquiry, just by the nature of what counsel is saying, that someone knew, even, that there, we, everybody presumed that the SEC wanted to question him a bit, Matula, about Jan. 1 and not about in-ray live ventures, even if it was an inquiry, nothing can arise from nothing, no matter how you really define arising out of, logically. The reason I ask the question is that if you apply Nevada law, and we don't know whether that's proper or not, our insurer says incident to or having connection with, which is different from causation. That would be different from causation, but it doesn't mean, arising out of doesn't mean proximate cause, it means some sinew connecting it. And here, even if it was incident to, the deposition never happened. We have the notice of the deposition, we have the note from the SEC saying we want to depose him, he was deposed. No documents were produced. In fact, in their briefing, Jan 1 says documents regarding Mr. Matula were produced way before this SEC note came in. So, we can't have anything, there's no connection, because the deposition never happened. No documents were produced, just because the SEC, for a second, thought they may want to talk to this gentleman does not mean everything related to it in any way, anything related to Jan 1 that happened afterwards, right? Which, by the way, Mr. Matula was never involved in any of it afterwards. Verlin Johnson, Mr. Safranowski, they were deposed. The Wells notices much later went to Jan 1 and Verlin Johnson. Mr. Matula was nowhere to be seen. So, I think any logical, if you look at what we're talking about, is a later claim will relate back, under the language of the Great American Policy, if it arises out of the inquiry, right? So, if you look at what we're talking about here in the context, the only reasonable, the only logical explanation could be some flowing from, some causal connection, some connectivity, right? Even if you're just, Your Honor, talking about connectivity, there is none, because there's nothing to connect to. I would then just, if anybody has any questions, I'm happy to answer them. It appears we do not. Thank you. Thank you. Rebuttal. Just briefly on the issue of inquiry, I think it's really important to emphasize that the definition of inquiry in the Great American Policy says, a request or demand for an insured person to either appear at a meeting, deposition, or interview or to produce documents. It doesn't say a request for a deposition and testimony. It says request. It doesn't say a deposition. So, here, I don't think there's any question that Mr. Matula, even though he wasn't deposed, the request for his deposition was an inquiry. And to the extent, what do we know from this record? Mr. Matula was a sole member of a special committee with respect to Jan 1's approval of the transaction the SCC was investigating. There's nothing in the record to indicate that Mr. Matula had any role for live ventures with respect to the appliance smart sale. There's nothing. So, the suggestion that somehow because this deposition didn't happen, we don't know why the SCC was going to question Mr. Matula, something that Great American got timely notice of, wasn't connected with per Ironshore and related to the subsequent activities for which Jan 196 coverage, I think, is completely inappropriate and wrong. I think that unquestionably, in the context of this case, during the Great American Policy period, after questioning Mr. Isaac about Jan 1's decision to sell appliance smart, the SCC did not question Jan 1's decision to sell appliance smart. The SCC gave written notice that it wanted to speak with Mr. Matula, and we know what his position was. He was overseeing that transaction only on behalf of Jan 1. Jan 1 gave timely notice of that inquiry, and therefore, because that is related to Mr. Matula's, the question to speak with Mr. Matula is related to the subsequent activities against Jan 1. They're all related, and therefore, it arose out of, and the subsequent expenses incurred by Jan 1 should be covered here. Thank you, Your Honors. Thank you very much. We thank both counsel for their arguments. The case is submitted, and we are adjourned for the day.
judges: SCHROEDER, THOMAS, MILLER